[No. B078486. Second Dist., Div. Six. Dec. 6, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE ISABEL SAMUDIO HERNANDEZ, Defendant and Appellant.

## COUNSEL

Janet C. Vining, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—This case illustrates that there are limits to the "good faith exception" to the exclusionary rule announced by the United States Supreme Court in *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405]). Paraphrasing Mr. Justice White, the name "Leon" is not a mere talisman in whose presence the exclusionary rule inexorably fades away and disappears. (Cf. *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443 461 [29 L.Ed.2d 564, 580, 91 S.Ct. 2022].)

Jose Isabel Samudio Hernandez appeals from the judgment entered following a court trial that resulted in his conviction of possessing more than 14.25 grams of a substance containing heroin for sale. (Health & Saf. Code, § 11351; Pen. Code, § 1203.07, subd. (a).) He meritoriously contends the search warrant lacked probable cause for the search of the residence at 610 Orange Drive and that the good faith rule does not prevent exclusion of the evidence seized pursuant thereto.[1]

In January 1993, two informants reported that a man known as Chavelo was selling large quantities of heroin and cocaine in El Rio. Both informants purchased heroin from Chavelo under police-controlled circumstances. During the first controlled buy, Chavelo drove a black Oldsmobile. Thereafter, he parked this car at a residence on Balboa Street in El Rio. In March 1993, police noted that this residence appeared to be vacant.

During the last week of March 1993, police conducted a second controlled buy. Chavelo arrived at the "meet location" driving a "yellowish green" Camaro. After the sale, he drove to El Rio and parked this car behind the residence located at 610 Orange Drive. Over the next several days, police observed the vehicles driven by Chavelo, i.e., the Oldsmobile and the Camaro, parked behind this residence.

---

[1]The search warrant was unquestionably valid insofar as it authorized the search of Chavelo. As we shall explain, the residence at 610 Orange Drive is quite another matter.

In April 1993, police watched the residence and saw another man drive the Camaro. Officer Alfred Bustillos and another undercover officer went to the residence and spoke to the occupants. One of them told the officer that "all the occupants of the various structures located on the property were all one large family."

Officer Bustillos prepared an affidavit setting forth the above information and obtained a warrant to search Chavelo and the 610 Orange Drive residence. The officer executed the search warrant on April 21, 1993. Chavelo was not present. The Oldsmobile and the Camaro were not present. Appellant, who was present, was arrested after police found four ounces of heroin, a scale, razor blades, and plastic baggies in his toolbox.

At the preliminary hearing, appellant moved to quash the warrant and suppress the evidence. (Pen. Code, § 1538.5.) The magistrate ruled that the affidavit failed to establish a sufficient nexus between Chavelo and the residence. However, the magistrate found that the officers who searched the residence acted in good faith in reliance upon the warrant.

When asked to explain the ruling, the magistrate replied: "Well, just going down the exceptions stated in Leon [*United States* v. *Leon, supra,* 468 U.S. 897 (82 L.Ed.2d 677)], there is nothing before me to suggest that the Magistrate or Judge, in issuing the warrant, was misled by information in the affidavit, that the affiant knew or would have known was false except for his reckless disregard for the truth. [¶] There is nothing before me to suggest that the Magistrate in this case wholly abandoned his judicial role. [¶] There is nothing before me to suggest that no reasonably well trained officer would have relied upon the warrant. [¶] And there is nothing to suggest that it [was] so lacking on indicia of probable cause as to render official belief in its existence unreasonable. [¶] And also it was not so facially deficient that the executing officers could not reasonably have presumed it to be valid. [¶] There was evidence in the affidavit to suggest that there was a nexus between [Chavelo] and this residence and it's a close question. And because it's close, I find that it was executed in good faith."

Appellant was held to answer in superior court and moved to set aside the information. (Pen. Code, § 995.) Appellant again argued that there was an insufficient nexus between Chavelo's sales of heroin and the residence to justify issuance of the search warrant for the residence. He further argued that the good faith exception, set forth in *United States* v. *Leon, supra,* 468 U.S. 897, did not apply because a well-trained officer would have known there was no probable cause to search the residence.

The trial court, in denying the motion, stated: "There is not just one car; there are two cars. . . . [T]his particular person Chavelo on two separate

occasions was seen in two cars. . . . [¶] There is significance to the fact that both vehicles, two vehicles that seem to be operated by this Defendant are seen at this property. I am mentioning that because I think each detail is important . . . . [¶] Now the officer goes out to see what else he can find. . . . He finds, to use your argument, nothing additional. You take the position that undermines his case. I'm not sure that does. I think what it simply does is it does not add anything. . . . [¶] . . . [T]he officer now finds himself in a position, I submit to you, where he has attempted to find something else and he hasn't. He now says to himself, 'Well, now, have we got enough? Let's see.' And he takes it to a District Attorney and the District Attorney looks at it and says 'I think so.' And now he takes it to a magistrate and the magistrate reads it and says 'I think so.' [¶] Now, your position to me is that it does not come within the good faith exception, assuming that there is not any nexus, and I find that hard to accept."[2]

The trial court ruled that the case was a "close one" but denied the Penal Code section 995 motion. Appellant waived jury trial and submitted the matter on the preliminary hearing transcript. The trial court found appellant guilty of possessing a controlled substance and possessing for sale more than 14.25 grams of heroin. (Health & Saf. Code, § 11351; Pen. Code, § 1203.07, subd. (a)(1).) Appellant was sentenced to the lower term of two years.

▮ On review, the search warrant affidavit is construed in a common-sense and realistic fashion. (*People* v. *Mesa* (1975) 14 Cal.3d 466, 469 [121 Cal.Rptr. 473, 535 P.2d 337]; *People* v. *Smith* (1994) 21 Cal.App.4th 942, 948-949 [26 Cal.Rptr.2d 580].) The affidavit must provide a substantial basis from which a magistrate can reasonably conclude there is a fair probability that the place to be searched contains contraband or evidence of a crime. (*Illinois* v. *Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317].)

Here the affidavit indicated that Chavelo, a known narcotics dealer, parked the Camaro behind the 610 Orange Drive residence once. The affidavit was silent on whether Chavelo ever even entered the 610 Orange

---

[2]Insofar as the trial court relied upon, i.e., gave significance to, the magistrate's issuance of the warrant, it erroneously did so. (*People* v. *Camarella* (1991) 54 Cal.3d 592, 605 [286 Cal.Rptr. 780, 818 P.2d 63].) Our Supreme Court has said that it is ". . . proper to consider . . . whether the affidavit was previously reviewed by a deputy district attorney (see *U.S* v. *Freitas* (9th Cir. 1988) 856 F.2d 1430-1432)." (*People* v. *Camarella, supra*, at p. 605, fn. 5.) Here, there was "review" by a deputy district attorney even though it was less than the help in drafting "the entire document" as was the situation in *U.S.* v. *Freitas* (9th Cir. 1988) 856 F.2d 1430. However, review by a deputy district attorney does not change the result here. He, too, should have known that the affidavit was insufficient for the search of the 610 Orange Drive residence. Nobody saw Chavelo enter this residence.

Drive residence or any of the other structures on the property. Weeks later, the police saw the Oldsmobile behind this residence. None of the officers observed Chavelo park the Oldsmobile there.

██ The presence of the vehicles raised suspicions, but failed to establish a nexus between the criminal activities and the residence. (E.g., *Bailey* v. *Superior Court* (1992) 11 Cal.App.4th 1107, 1112-1113 [15 Cal.Rptr.2d 17] [heavy foot traffic and visits by unknown people did not support search warrant]; *Alexander* v. *Superior Court* (1973) 9 Cal.3d 387, 391 [107 Cal.Rptr. 483, 508 P.2d 1131] [affidavit that known drug dealer frequently visited a residence did not establish probable cause for warrant to search that residence].) No information was presented that Chavelo owned the vehicles, lived at the 610 Orange Drive residence, received mail or phone calls at the residence, or was seen carrying packages to and from it. Based on the totality of the circumstances, there was no substantial basis for concluding that probable cause existed for the residential search. (*Illinois* v. *Gates*, *supra*, 462 U.S. at p. 238 [76 L.Ed.2d at p. 548].)

Citing *Leon* v. *United States, supra*, 468 U.S. 897, respondent argues that the evidence may not be suppressed if the officer executing the warrant acted in good faith reliance on the warrant.[3] ██ Where, as here, the warrant is invalid because the supporting affidavit does not establish probable cause, the relevant inquiry is ". . . whether a reasonable and well-trained officer 'would have *known* that his affidavit failed to establish probable cause and that he should not have applied for the warrant.' [Citation.]" (*People* v. *Camarella, supra*, 54 Cal.3d 592, 605-606.)

*Leon* requires that the application of the good faith exception be measured against the standard of objective reasonableness. "The standard of objective good faith derives from something more substantial than a hunch. It requires that officers 'have a reasonable knowledge of what the law prohibits.' [Citation.] A reasonable officer will be found to know a search was illegal when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. [Citation.]" (*Bailey* v. *Superior Court, supra*, 11 Cal.App.4th 1107, 1113.)

██ Here, a reasonable and well-trained officer would have known that more was needed to establish a nexus for the search of 610 Orange Drive. Contrary to the magistrate's and the trial court's descriptions, this was not a "close case." There was no nexus between the criminal activity and the

---

[3]The prosecution has the burden of establishing the officer's "objectively reasonable" reliance. (*United States* v. *Leon, supra*, 468 U.S. at p. 924 [82 L.Ed.2d at p. 699]; *People* v. *Camarella, supra*, 54 Cal.3d 592, 596.)

actual residence. The supporting affidavit failed to state that Chavelo ever entered the 610 Orange Drive residence. Chavelo may have borrowed the vehicles or merely used the area behind the residence as a parking lot. The affidavit further indicated that Officer Bustillos and another detective, working undercover, talked to the residents but were unable to ascertain whether Chavelo lived there.[4] The absence of other corroborating evidence, such as utility bills, rental and telephone records, or car registration records linking Chavelo to the vehicles or the 610 Orange Drive residence is glaring.

A well-trained officer, exercising his or her professional judgment, could not have objectively believed that probable cause existed for the residential search. ■ "[T]he objective reasonableness of an officer's decision to apply for a warrant must be judged based on the affidavit and the evidence of probable cause contained therein and known to the officer, 'and without consideration of the fact that the magistrate accepted the affidavit.' [Citation.]" (*People* v. *Camarella, supra,* 54 Cal.3d 592, 605.) ■ Here the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. (*United States* v. *Leon, supra* 468 U.S. at p. 923 [82 L.Ed.2d at p. 699].) The evidence seized during the search of the residence should have been suppressed.

The judgment is reversed with instructions to the trial court to enter an order granting appellant's motion to set aside the information.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied January 3, 1995, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied February 16, 1995. George, J., was of the opinion that the petition should be granted.

---

[4]The affidavit recites: "Detective Uhlich told me that the surveillance team maintained surveillance on 610 Orange Drive to make sure that 'Chevalo' lived at the residence." The affidavit omits the result of Detective Uhlich's surveillance efforts. We presume that if an officer saw Chavelo enter the residence, a simple recitation would appear in the affidavit.