[No. C021099. Third Dist. Mar. 11, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS MARTIN ROMERO, Defendant and Appellant.

442

**COUNSEL**

Sylvia Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and Carl D. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SIMS, Acting P. J.—Following the denial of his motion to suppress evidence (Pen. Code, § 1538.5), defendant Carlos Martin Romero pleaded guilty to possession for sale of a controlled substance. (Health & Saf. Code, § 11378.)

The trial court sentenced defendant to state prison and, as pertinent, imposed a $1,000 restitution fine.

Defendant appeals, contending (1) his motion to suppress was erroneously denied, and (2) the trial court erroneously imposed the restitution fine.

We shall affirm the judgment.

I

*Motion to Suppress*

When law enforcement officers searched defendant's mobile home pursuant to a search warrant, they discovered 973.4 grams of methamphetamine. Defendant contends the affidavit in support of the warrant lacked probable cause and the officers could not rely on the warrant in good faith. The trial court concluded the officers could rely in good faith upon the warrant. We shall reach the same conclusion and therefore hold that the trial court properly denied defendant's motion to suppress.

As pertinent, the affidavit in support of the warrant provided as follows.

On January 6, 1995, James Seminoff, special agent for the Bureau of Narcotic Enforcement, purchased 130.7 grams of methamphetamine from Richard Medina. Medina gave Seminoff a pager number to call to purchase more methamphetamine.

Medina lived at 523 Mariposa Street in the town of Gerber. On January 11, 1995, the house was under surveillance by law enforcement agents. Seminoff spoke to Medina on the phone and Medina told Seminoff that Medina was expecting a shipment of methamphetamine to arrive from Mexico. Medina also told Seminoff he would "check a couple of other sources" and would call Seminoff back.

Four minutes later, a surveillance officer observed two Mexican male adults leave the Mariposa Street house in a white pickup. Surveillance was maintained on the vehicle, which proceeded to the Richfield Tavern. One of

the occupants of the vehicle went into the tavern and returned approximately three minutes later.

The pickup then proceeded to defendant's mobile home. Three minutes later, the vehicle left the mobilehome and returned to 523 Mariposa Street, where the two Mexican males entered the residence. Nine minutes later, Medina phoned Seminoff and told him Medina had checked with his source for methamphetamine but could not locate any at this time.

On January 30, 1995, law enforcement officers were again maintaining surveillance at 523 Mariposa Street. On that date, in a telephone conversation with Medina, Seminoff agreed to purchase a quarter pound of methamphetamine. Medina said his source had already sold his supply of "yellow" methamphetamine but "white" methamphetamine was still available for purchase. Seminoff agreed to purchase some "white" methamphetamine.

A few minutes after their phone conversation ended, Medina was seen leaving the Mariposa Street residence with another male adult in the same pickup truck that was used in the January 11 incident. Surveillance officers followed the pickup truck to defendant's mobilehome. Two minutes later, the pickup truck left the mobilehome and proceeded directly to Redding where Seminoff completed a purchase of methamphetamine from the occupants of the truck.

In the trial court, the prosecution argued the warrant showed probable cause and, even if the warrant failed to show probable cause, the officers relied on the warrant in good faith under the doctrine of *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405].

The trial court upheld the search on the ground the officers had relied on the warrant in good faith under *Leon*.

■ "Initially, we review the standards for determining probable cause to support a search warrant. In *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317] (*Gates*), the high court rejected rigid adherence to the 'two pronged' probable cause test described in *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], and *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]. Instead, the court embraced a 'totality of the circumstance' approach under which '[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of

a crime will be found in a particular place.' (*Gates, supra,* 462 U.S. at p. 238 [76 L.Ed.2d at p. 548].) [¶] The court observed that 'probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.' (*Gates, supra,* 462 U.S. at p. 232 [76 L.Ed.2d at p. 544].)" (*People* v. *Camarella* (1991) 54 Cal.3d 592, 600-601 [286 Cal.Rptr. 780, 818 P.2d 63].)

In *Camarella,* our Supreme Court assumed for the sake of argument that the affidavit failed to establish probable cause and proceeded to determine whether the officers were entitled to rely on the warrant in good faith under *Leon.* Since the trial court in this case based its ruling on *Leon,* we shall do the same here.

"In *Leon,* the high court held 'the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.' (468 U.S. at p. 900 [82 L.Ed.2d at p. 684].) The court made clear that the government has the burden of establishing 'objectively reasonable' reliance (*id.,* at p. 924 [82 L.Ed.2d at p. 699]), and it described four limited situations in which such reliance would not be established, and in which suppression under the exclusionary rule would remain an appropriate remedy: (i) the issuing magistrate was misled by information that the officer knew or should have known was false; (ii) the magistrate 'wholly abandoned his judicial role'; (iii) *the affidavit was ' "so lacking in indicia of probable cause" ' that it would be ' "entirely unreasonable" ' for an officer to believe such cause existed*; and (iv) the warrant was so facially deficient that the executing officer could not reasonably presume it to be valid. (*Id.,* at p. 923 [82 L.Ed.2d at p. 699], italics added.)

".  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"We distill from *Leon, supra,* 468 U.S. 897, and its progeny the following: If a well-trained officer should reasonably have *known* that the affidavit failed to establish probable cause (and hence that he should not have sought a warrant), exclusion is required under the third situation described in *Leon,* and a court may not rely on the fact that a warrant was issued in assessing objective reasonableness of the officer's conduct in seeking the warrant. But in all other cases, unless one of the other limited *Leon* situations is triggered, *Leon*'s 'general' rules of nonexclusion will apply." (*People* v. *Camarella, supra,* 54 Cal.3d at p. 596.)

In urging that *Leon* does not save the instant search, defendant relies strongly on *People* v. *Hernandez* (1994) 30 Cal.App.4th 919 [35 Cal.Rptr.2d

916] where the court concluded *Leon* would not justify a search conducted pursuant to an insufficient warrant affidavit.

At issue in *Hernandez* was the search of a residence at 610 Orange Drive. The warrant affidavit recited as follows:

"In January 1993, two informants reported that a man known as Chavelo was selling large quantities of heroin and cocaine in El Rio. Both informants purchased heroin from Chavelo under police-controlled circumstances. During the first controlled buy, Chavelo drove a black Oldsmobile. Thereafter, he parked this car at a residence on Balboa Street in El Rio. In March 1993, police noted that this residence appeared to be vacant.

"During the last week of March 1993, police conducted a second controlled buy. Chavelo arrived at the 'meet location' driving a 'yellowish green' Camaro. After the sale, he drove to El Rio and parked this car behind the residence located at 610 Orange Drive. Over the next several days, police observed the vehicles driven by Chavelo, i.e., the Oldsmobile and the Camaro, parked behind this residence.

"In April 1993, police watched the residence and saw another man drive the Camaro. Officer Alfred Bustillos and another undercover officer went to the residence and spoke to the occupants. One of them told the officer that 'all the occupants of the various structures located on the property were all one large family.'" (*People* v. *Hernandez, supra,* 30 Cal.App.4th at pp. 921-922.)

The Court of Appeal found the affidavit fatally lacking in probable cause as follows:

"Here the affidavit indicated that Chavelo, a known narcotics dealer, parked the Camaro behind the 610 Orange Drive residence once. The affidavit was silent on whether Chavelo ever even entered the 610 Orange Drive residence or any of the other structures on the property. Weeks later, the police saw the Oldsmobile behind this residence. None of the officers observed Chavelo park the Oldsmobile there.

"The presence of the vehicles raised suspicions, but failed to establish a nexus between the criminal activities and the residence. [Citations.] No information was presented that Chavelo owned the vehicles, lived at the 610 Orange Drive residence, received mail or phone calls at the residence, or was seen carrying packages to and from it. Based on the totality of the circumstances, there was no substantial basis for concluding that probable cause

existed for the residential search. [Citation.]" (*People* v. *Hernandez, supra,* 30 Cal.App.4th at pp. 923-924.)

This case contains more indicia of probable cause than *Hernandez.* Most significant here is the temporal sequence (lacking in *Hernandez*) between a drug dealer's promise to check his sources of drugs (or his statement of intention to sell drugs) and a visit to defendant's residence. Thus, here, on January 11, a drug dealer's emissaries visited defendant's residence shortly after the drug dealer said he would check his sources to see if drugs could be delivered. On January 30, within minutes of agreeing to sell drugs, the drug dealer stopped briefly at defendant's residence and then drove without interruption to consummate a drug sale. These facts permit the reasonable inference that defendant's residence was a source of supply for the drug dealer.

Defendant makes much of the fact that the officers did not recount that the occupants of the pickup truck actually entered the residence. However, from all the surrounding circumstances, it is possible to draw the inference that some contact was made at the residence. A vehicle does not ordinarily stop at a residence for short periods of time, on two occasions, so that the occupants of the vehicle can merely loiter. But if this is the basis upon which probable cause is lacking, it is a minor detail when the affidavit is construed as a whole. Examining the affidavit in its entirety, we conclude on these facts that a well-trained officer reasonably could have believed that the affidavit presented a close or debatable question on the issue of probable cause. (*People* v. *Camarella, supra,* 54 Cal.3d at p. 606.) Thus it cannot be said that Agent Seminoff should have known that his affidavit failed to establish probable cause (and hence that he should not have sought a warrant). (*Ibid.*) Agent Seminoff's subsequent reliance on the warrant that was issued was thus objectively reasonable under *Leon* and the trial court properly denied defendant's motion to suppress on that basis. (*Id.* at p. 607.)

II

*Restitution Fine*

At sentencing, the trial court imposed a $1,000 restitution fine pursuant to Penal Code section 1202.4 (hereafter section 1202.4). Defendant adduced no evidence bearing on his inability to pay the fine.

■ On appeal, defendant contends the trial court erroneously failed to make an express finding of his ability to pay the fine and the record contains insufficient evidence of defendant's ability to pay.

Defendant relies upon Government Code section 13967 (hereafter section 13967). However, defendant has selected the wrong statute.[1]

In 1994, the Legislature amended Government Code section 13967 and Penal Code section 1202.4 so as to delete provisions related to a restitution fine from section 13967 and to add them to Penal Code section 1202.4. (Stats. 1994, ch. 1106, §§ 2, 3.) The pertinent provisions of amended section 1202.4, that were in effect at the time of defendant's crimes and at the time of sentencing, are set out in the margin.[2]

Under subdivision (d) of section 1202.4, a defendant's ability to pay remains a relevant factor in setting a restitution fine in excess of the statutory minimum (here $200). However, subdivision (d) also says, "Express findings by the court as to the factors bearing on the amount of the fine shall not be required." Since ability to pay is a factor bearing on the amount of the fine, the trial court was not required to make a finding on that issue, and defendant's contention to the contrary is not meritorious.

Nor need the record in this case contain substantial evidence showing defendant's ability to pay the fine. Subdivision (d) of section 1202.4 also provides, "A defendant shall bear the burden of demonstrating lack of his or her ability to pay." This express statutory command makes sense only if the

---

[1]This mistaken reliance is particularly hard to understand given that the trial court expressly cited section 1202.4 in imposing the restitution fine.

[2]Section 1202.4 provided in relevant part: "(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine. The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000) if the person is convicted of a felony, and shall not be less than one hundred dollars ($100), and not more than one thousand dollars ($1,000) if the person is convicted of a misdemeanor.

"(c) The restitution fine shall be in addition to any other penalty or fine imposed and shall be ordered regardless of the defendant's present ability to pay. However, if the court finds that there are compelling and extraordinary reasons, the court may waive imposition of the fine. When the waiver is granted, the court shall state on the record all reasons supporting the waiver. Except as provided in this subdivision and subdivision (f), under no circumstances shall the court fail to impose the separate and additional restitution fine required by this section. This fine shall not be subject to penalty assessments as provided in Section 1464.

"(d) In setting the amount of the fine pursuant to subdivision (b) in excess of the two hundred dollar ($200) or one hundred dollar ($100) minimum, the court shall consider any relevant factors including, but not limited to, the defendant's ability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, and the extent to which any other person suffered any losses as a result of the crime. Those losses may include pecuniary losses to the victim or his or her dependents as well as intangible losses, such as psychological harm caused by the crime. Consideration of a defendant's ability to pay may include his or her future earning capacity. *A defendant shall bear the burden of demonstrating lack of his or her ability to pay. Express findings by the court as to the factors bearing on the amount of the fine shall not be required.*" (Italics added.)

statute is construed to contain an implied rebuttable presumption, affecting the burden of proof, that a defendant has the ability to pay a restitution fine. Whatever is necessarily implied in a statute is as much a part of it as that which is expressed. (*Johnston* v. *Baker* (1914) 167 Cal. 260, 264 [139 P. 86]; *People* v. *Kading* (1988) 204 Cal.App.3d 1500, 1508 [251 Cal.Rptr. 916].) The statute thus impliedly presumes a defendant has the ability to pay and expressly places the burden on a defendant to prove lack of ability. Where, as here, a defendant adduces no evidence of inability to pay, the trial court should presume ability to pay, as the trial court correctly did here. Since here defendant's ability to pay was supplied by the implied presumption, the record need not contain evidence of defendant's ability to pay.

DISPOSITION

The judgment is affirmed.

Nicholson, J., and Morrison, J., concurred.