Filed 7/19/13  P. v. Martinez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062309 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS246652) |
| ROBERT MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ana España, Judge.  Affirmed.

Therese Osterman Stevenson for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Lise Jacobson and Vincent P. LaPietra, Deputy Attorneys General, for Plaintiff and Respondent.\

## INTRODUCTION

A jury found Robert Martinez guilty of mayhem (Pen. Code,[1] § 203) and battery causing serious bodily injury (§ 243, subd. (d)), both as lesser included offenses of aggravated mayhem (§ 205; count 1). The jury also found Martinez guilty of assault by means likely to produce great bodily injury (§ 245, subd. (a)(1); count 2) and found true an allegation he personally inflicted the great bodily injury (§§ 1192.7, subd. (c)(8) & 12022.7, subd. (a)). Martinez additionally admitted having a prior prison commitment conviction (§ 667.5, subd. (b)). The court subsequently set aside the battery with great bodily injury conviction and sentenced him to a total term of nine years in prison.

Martinez appeals, contending the court erroneously admitted cumulative and prejudicial identification evidence, there was insufficient evidence of disfigurement or disability to support the mayhem conviction, the court erroneously failed to instruct the jury on multiple causation, the court erroneously imposed an excessive fine and fee, and the abstract of judgment does not conform to the court's oral pronouncement of judgment.

The People concede the latter two errors and we shall direct the court to modify the abstract of judgment to correct them. We affirm the judgment in all other respects.

---

[1]     Further statutory references are also to Penal Code unless otherwise stated.

BACKGROUND

Sammy Thomas, a jail inmate, sucker punched another jail inmate in the jaw, causing the inmate to fall down. Martinez, also a jail inmate, then joined Thomas in punching, kicking, and stomping on the victim as the victim lay on the ground covering his face with his hands and arms. Thomas and Martinez initially ignored a responding prison guard's verbal commands to stop fighting. After another prison guard arrived with a pepper ball launcher, they stopped their attack and retreated to their respective cells. When the guards went to Martinez's cell to get him, the guards noticed Martinez was breathing hard and his knuckles were red. After the incident, one of the guards reviewed a video recording of the attack and confirmed Martinez was one of the attackers.

As a result of the assault, the victim's jaw was fractured on both sides of his face. In addition, he suffered a fractured forearm, fractured ribs on both sides of his chest, a crushed or lacerated spleen, and punctured and collapsed lungs. The victim had surgery to repair his broken jaw, after which his lower jaw protruded, changing his appearance and causing a speech impairment. He also lost feeling in his chin causing him to drool.

*Defense Evidence*

While two prison guards identified Martinez as one of the assailants, neither guard noticed Martinez had tattoos on the underside of his forearms. The parties stipulated Martinez had the tattoos on the date of the incident.

# DISCUSSION

## I

### *Failure to Exclude Video Stills*

#### A

After playing a video recording of the attack, the prosecutor began introducing 30 still images taken from the video. For each image, the prosecutor had one of the prison guards who witnessed the attack identify the individuals depicted in it and what they were doing. After the tenth image, defense counsel objected to the presentation of any additional images as cumulative under Evidence Code section 352. The court overruled the objection.

#### B

Martinez contends the additional images were cumulative to the testimony of the two prison guards who witnessed the attack and to the videotape of the attack shown to the jury. He further contends the additional images were more prejudicial than probative because they artificially bolstered otherwise weak identification evidence. Consequently, he contends the admission of the additional images deprived him of his state and federal constitutional right to a fair trial. We disagree.

Evidence Code section 352 permits a court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  " 'A trial court's exercise of discretion in admitting or rejecting evidence pursuant to Evidence Code section 352 "will not be

disturbed on appeal unless there is a manifest abuse of that discretion resulting in a miscarriage of justice." [Citation.]' [Citation.]" (*People v. Thomas* (2011) 51 Cal.4th 449, 485.)

Even when photographs are offered to prove facts already established by other evidence, a court is not required to exclude them as cumulative if the photographs are relevant and can assist the jury in understanding and evaluating the testimony. (*People v. Pollock* (2004) 32 Cal.4th 1153, 1170-1171; *People v. Heard* (2003) 31 Cal.4th 946, 977-978; *People v. Michaels* (2002) 28 Cal.4th 486, 532; *People v. Price* (1991) 1 Cal.4th 324, 441.) Here, the photographs were unquestionably relevant because they depicted the assault and the assailants. Moreover, the jury was tasked with deciding not just whether Martinez was one of the assailants, but numerous other issues including Martinez's intent, whether he personally used force, and whether the force he used was likely to produce great bodily injury. (CALCRIM Nos. 800, 801, 875, 925, and 3160.) The video stills provided the jury an opportunity to study the attack on essentially a frame-by-frame basis. Thus, the video stills could have assisted the jury in understanding and evaluating both the testimony of the two prison guard eyewitnesses and the videotape of the attack.

Further, the record does not show admission of the video stills necessitated an undue consumption of time, confused issues, or misled the jury. Although Martinez asserts admission of the video stills unduly prejudiced him, "[p]rejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues . . . . " (*People v. Crew* (2003) 31 Cal.4th

5

822, 842.) It does not include evidence probative of a defendant's guilt. (*Ibid.*)

Accordingly, Martinez has not established the court manifestly abused its discretion in declining to exclude the video stills under Evidence Code section 352.

## II

*Sufficiency of Evidence of Mayhem Conviction*

Martinez contends there was insufficient evidence the victim sustained a disabling or disfiguring injury to support his mayhem conviction. In deciding claims of insufficient evidence in criminal cases, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" [Citation.]' [Citations.] The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

6

The crime of mayhem is codified in section 203, which "provides: 'Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem.' [Citations.] Section 203 generally prohibits six injurious acts against a person, three that specify a particular body part and three that do not: (1) dismembering or depriving a part of someone's body; (2) disabling or rendering useless a part of someone's body; (3) disfiguring someone; (4) cutting or disabling the tongue; (5) putting out an eye; and (6) slitting the nose, ear or lip. [Citation.]" (*People v. Santana* (2013) 56 Cal.4th 999, 1003.) The rationale for the crime is " ' "the preservation of the natural completeness and normal appearance of the human face and body." ' " (*Id.* at p. 1004.)

Among the types of injuries that will support a mayhem conviction are severe facial trauma requiring the implanting of metal plates to provide structure to facial bones, impaired upper lip sensation, and a broken ankle not completely healed after more than six months. (*People v. Santana*, *supra*, 56 Cal.4th at p. 1004; *People v. Newby* (2008) 167 Cal.App.4th 1341, 1348; *People v. Hill* (1994) 23 Cal.App.4th 1566, 1571; *People v. Thomas* (1979) 96 Cal.App.3d 507, 512, disapproved on another point in *People v. Kimble* (1988) 44 Cal.3d 480, 496 & fn. 12.) In this case, the evidence shows the victim suffered substantially similar injuries. More than a year after the attack, his broken arm had calcium build up and could not bear much weight. In addition, doctors used metal plates and screws to repair his jaw with only partial success. His bottom jaw now protrudes causing a slight speech impairment and he lost sensation in his chin causing

7

him to drool. He testified he did not have these problems before the attack. He also testified his jaw was a noticeably different shape after the attack.

The trauma surgeon who treated the victim after the attack confirmed a person with the type of arm injury the victim had could develop decreased strength and a decreased ability to rotate his arm at the elbow. The surgeon also confirmed a person with the type of jaw injury the victim had could develop slurred speech, facial numbness, and facial deformity. We, therefore, conclude there is sufficient evidence of permanent disability or disfigurement to support the mayhem conviction.

The surgeon's testimony about the victim's prior facial injuries does not alter our conclusion. The surgeon noted the victim had previously fractured his skull, his nose, and other bones on the upper front and side of his face. Although the surgeon was not involved in the treatment of those injuries, he testified he did not believe they would have affected the victim's speech because they involved a different part of the victim's face and were healed by the time of the attack. Even if the victim had a pre-existing speech impediment from the prior injuries, the victim's other attack-related injuries were sufficient to support the mayhem conviction.

### III

*Refusal to Instruct on Multiple Causation*

#### A

The court instructed the jury on causation with CALCRIM No. 240. The instruction informed the jury, "An act causes injury if the injury is the direct, natural, and probable consequence of the act and the injury would not have happened without the act.

8

A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.  In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence."

Because the trauma surgeon testified the victim had prior facial injuries, defense counsel requested the court also instruct the jury on multiple causation.  The instruction would have informed the jury:  (1) there may be more than one cause of injury; (2) an act causes injury only if it is a substantial factor in causing the injury; (3) a substantial factor is more than a trivial or remote factor; and (4) a substantial factor does not have to be the only factor that causes the injury.  (CALCRIM No. 240.)  The court declined to provide the multiple causation instruction, finding there was not substantial evidence to support it.

B

Martinez contends the court's refusal to instruct on multiple causation requires reversal of his mayhem conviction because it deprived him of his due process right to a fair trial.  We disagree.

" ' "[T]he trial court normally must, even in the absence of a request, instruct on general principles of law that are closely and openly connected to the facts and that are necessary for the jury's understanding of the case."  [Citation.]  In addition, "a defendant has a right to an instruction that pinpoints the theory of the defense. . . ." '  [Citation.]  The court, however, 'may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation]." '  [Citation.]"  (*People v. Bivert* (2011) 52 Cal.4th 96, 120.)

9

In this case, there was no evidence the victim's prior injuries wholly or partially caused the speech impairment he suffered from the attack.[2] The victim testified he did not have a speech impairment before the attack. In addition, the trauma surgeon testified he did not believe the prior injuries could have caused a speech impairment because the injuries involved a different part of the victim's face. Accordingly, the court correctly concluded there was not substantial evidence to support the multiple causation instruction.

IV

*Restitution Fine Amount*

As part of the sentence, the court ordered Martinez to pay the maximum restitution fine of $10,000. Martinez contends the court abused its discretion by imposing the maximum fine without considering his ability to pay.

Martinez has forfeited this issue on appeal by failing to object to the fine below. "By 'failing to object on the basis of his [ability] to pay,' defendant forfeits both his claim of factual error and the dependent claim challenging 'the adequacy of the record on that point.' [Citations.]" (*People v. McCullough* (2013) 56 Cal.4th 589, 597.) Even if Martinez had not forfeited this issue, he has not established an abuse of discretion.

---

2       Defense counsel did not ask the surgeon whether the prior facial injuries could have caused any of the other disabilities underlying the mayhem charge.

"In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (§ 1202.4, subd. (b).) Where, as here, a defendant is convicted of a felony on or after January 1, 2012, but before January 1, 2013, the fine shall be set between $240 and $10,000, commensurate with the seriousness of the offense. (§ 1202.4, subd. (b)(1).)

In setting the fine above the minimum "the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered any losses as a result of the crime, and the number of victims involved in the crime." (§ 1202.4, subd. (d).) The court may not consider a defendant's inability to pay a compelling and extraordinary reason not to impose a restitution fine. It may only consider the defendant's ability to pay in increasing the fine above the statutory minimum. (§ 1202.4, subd. (c).)

Moreover, a court is not required to make express findings as to the factors bearing on the amount of the fine (§ 1202.4, subd. (d)), and because the defendant has the burden of demonstrating an inability to pay, the defendant is impliedly presumed to have an ability to pay unless the defendant adduces contrary evidence. (*People v. Romero* (1996) 43 Cal.App.4th 440, 448-449.) As Martinez did not adduce contrary evidence, he did not rebut this presumption.

11

Although the probation officer's report indicated Martinez has limited education and work experience, these circumstances do not compel a conclusion Martinez necessarily lacks the ability to pay the maximum fine. Martinez was 26 years old at the time of sentencing and nothing in the record suggests he is physically, mentally or emotionally incapable of finding and maintaining productive employment once his sentence is completed. (§ 1202.4, subd. (d) [consideration of inability to pay may include consideration of a defendant's future earning capacity].) Accordingly, Martinez has not shown the court abused its discretion by imposing the maximum restitution fine.

As we have addressed the merits of this issue, we need not address Martinez's contention his trial counsel provided ineffective assistance of counsel by failing to object to the imposition of the maximum fine.

V

*Excessive Fee and Assessment*

As part of Martinez's sentence, the court imposed a $160 court security fee and a $120 criminal conviction assessment. Martinez contends, the People concede, and we agree these amounts are excessive.

Section 1465.8, subdivision (a)(1), requires a court to impose a $40 court security fee for every criminal conviction. Similarly, Government Code section 70373, subdivision (a)(1) requires a court to impose a $30 criminal conviction assessment for every felony conviction. Since the court set aside Martinez's conviction for battery causing great bodily injury, Martinez was only convicted of two crimes and the court was only authorized to impose an $80 court security fee and a $60 criminal conviction

12

assessment. We shall direct the court to modify the abstract of judgment accordingly. (*People v. Smith* (2001) 24 Cal.4th 849, 854 [appellate court may correct an unauthorized sentence without remand].)

VI

*Discrepancy Between Oral Pronouncement and Abstract of Judgment*

Although the court set aside Martinez's conviction for battery with serious bodily injury at the sentencing hearing, the abstract of judgment nonetheless states Martinez's count 1 conviction was for violating sections "203/*243(d)*," described as "Mayhem/*Battery w/Serious Bodily Injury* LIO." (Italics added.) As the abstract of judgment is inconsistent with the court's oral pronouncement, Martinez contends, the People concede, and we agree the abstract of judgment must be modified to correct the discrepancy. We, therefore, shall direct the court to modify the abstract of judgment to reflect mayhem under section 203 as the sole basis for Martinez's conviction in count 1. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [appellate court may order correction of an abstract of judgment that does not accurately reflect the oral pronouncement of judgment].)

13

## DISPOSITION

The court is directed to modify the abstract of judgment to reduce the court security fee to $80, to reduce the criminal conviction assessment to $60, and to show mayhem under section 203 as the sole basis for the count 1 conviction. In all other respects, the judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

McINTYRE, J.

IRION, J.

14