Filed 6/16/21  P. v. Mosteller CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C090167 |
| Plaintiff and Respondent, | (Super. Ct. No. 18F7556) |
| v. | |
| JACOB TRACY MOSTELLER, | |
| Defendant and Appellant. | |

After the trial court denied his motion to quash the search warrant and suppress evidence, defendant Jacob Tracy Mosteller pleaded no contest to a single count of possession of ammunition by a convicted felon.  On appeal, defendant asks us to review the sealed portion of the search warrant affidavit and in camera proceedings on the motion to determine whether the trial court erred in sealing the affidavit and denying defendant's motion to quash the warrant and suppress evidence.  He also challenges the basis for the search as deficient.  We have reviewed the materials in question and will affirm the judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

*Defendant's Conduct and the Searches*

According to the public portion of the affidavit supporting the search warrant at issue, Officer Paul Slagle, working with the Shasta Inter-Agency Task Force, conducted surveillance of Enrique Puga, a suspected drug dealer. Officer Slagle received information from three confidential informants that Puga was selling and distributing heroin in the area. Surveillance of Puga's home established that he drove a black Camaro and a silver Chevy Silverado. A member of the task force observed Puga driving the Silverado, followed by a woman in a sedan. The pair drove a short distance and then drove slowly through various parking lots, which the officers believed to be a counter-surveillance technique to determine whether they were being followed by law enforcement. The officers also noted that narcotics dealers frequently travel in tandem with a "load car," which would typically carry the narcotics for sale.

Later that month, task force agents saw Puga drive his Silverado through town in a similar pattern, driving slowly into various business parking lots, waiting in the parking lots for a short period of time while scanning his surroundings, and then driving to a different parking lot. Puga did this for one or two hours before driving to defendant's residence. Defendant's residence was only a 15 minute drive away and the agents interpreted Puga's "meticulous counter surveillance techniques" as a sign defendant played some role in the distribution operation.

Shortly thereafter, Officer Slagle saw a white Toyota 4Runner, which was registered to defendant at his residential address, parked at Puga's home. Officer Slagle checked defendant's criminal history and determined he had prior convictions for possessing a controlled substance (Health & Saf. Code, § 11350),[1] transporting a

---

[1] Undesignated statutory references are to the Health and Safety Code.

controlled substance (§ 11352), possession of controlled substance paraphernalia (§ 11364), and being under the influence of a controlled substance (§ 11550). Officer Slagle also ran a records check of defendant and found he had listed that same residential address as his address on his Shasta County jail booking sheet.

Over a two-month span, Officer Slagle saw Puga's Silverado travel to defendant's residence multiple times, "consistently during night time hours." In particular, Officer Slagle noted he saw Puga travel to the residence the week of April 15, 2018.

Task force agents catalogued a variety of actions taken by Puga and codefendants Tisha Munchiando and Bryttni Landsem, including many frequent, short visits by Landsem to Puga's residence in the early afternoon or evening hours. Landsem and Puga also had prior convictions for, among other things, possession of controlled substances (§ 11350) and Puga had convictions for transportation of a controlled substance (§ 11352) and possession of a controlled substance for sale (§ 11351).

Based on this information, as well as information regarding Officer Slagle's expertise and information from a sealed Attachment A, the magistrate authorized a search warrant for, as relevant here, defendant's residence, vehicle, and person.

Officers executed the search warrant and found several firearms and ammunition in defendant's residence. Defendant was charged with possession of a firearm by a convicted felon (Pen. Code, § 29800, subd. (a); count 1) and possession of ammunition by a convicted felon (Pen. Code, § 30305, subd. (a)(1); count 2).[2]

*Motion to Quash/Suppress and Hearing*

Defense counsel filed a motion to quash the search warrant and suppress evidence, arguing the search warrant was not supported by probable cause. The trial court held a hearing on the motion. The court clarified defendant's motion was not a motion to

---

[2] The complaint also charged Munchiando and Landsem with three other counts.

disclose the identity of the confidential informants and was only a motion to quash, not to traverse, the search warrant. The court reviewed the sealed portion of the search warrant in camera and determined "it was properly sealed."

The trial court then considered arguments from both parties on the motion to quash. Defense counsel argued the search warrant was not based on probable cause connecting defendant "or his residence to any suspected criminal activity." Citing *Alexander v. Superior Court* (1973) 9 Cal.3d 387 (*Alexander*) and *People v. Hernandez* (1994) 30 Cal.App.4th 919 (*Hernandez*), defendant argued the mere fact "a known narcotics dealer" had visited defendant's residence was insufficient to establish probable cause. The prosecution responded that, considering the totality of the circumstances (including the sealed portion of the affidavit), the evidence defendant had also been at Puga's residence, and the evidence Puga's residence was used for drug transactions, the affidavit provided probable cause to support the search.

After taking a recess to review *Alexander*, *Hernandez*, and the search warrant affidavit, the trial court observed: "But what I did note here is that there were observations of the affiant who performed surveillance of Enrique Puga. And during the week of January 28th, 2018, he observed Mr. Puga at Defendant's address on several occasions. And during the week of February 11th, 2018, the Defendant was seen at Mr. Puga's address, or at least the cars were seen there. And, likewise, in February and March of 2018, there was observations of Mr. Puga's car seen traveling to the Defendant's place of residence as well as one time, I believe, in April of 2018.

"And so, tentatively I think this case is a little bit different than *Alexander* in that the information here is not stale as it was in *Alexander*. And, also, there is a difference between *Alexander* and *Hernandez* in that I think the statements that were made by the confidential informant were not as conclusionary, and corroboration did exist based upon the surveillance and observations of the officer.

4

"This is a little bit different than *Hernandez*, especially in that *Hernandez* there was a reporting -- a report of only one or, at the most, two times when the Defendant and the other person met, and this is a little bit more of a connection between Mr. Puga and Mr. Mosteller." After hearing further argument from the parties, the court denied the motion: "Based upon the totality of the circumstances, I do find that there was a fair probability that contraband or evidence of crime would be found in the place searched by the search warrant. Therefore, I'm going to deny the motion to quash." Defendant then pleaded no contest to one count of possession of ammunition by a convicted felon and the prosecution dismissed the other count.

## DISCUSSION

### I

### *Hobbs Review*

Citing *People v. Hobbs* (1994) 7 Cal.4th 948 (*Hobbs*), defendant first asks us to review the sealed transcript of the in camera hearing, as well as the confidential Attachment A to the search warrant, to independently determine whether the trial court erred in sealing the affidavit. The People agree that review of the sealed materials is appropriate.

Under *Hobbs*, "[o]n a properly noticed motion by the defense seeking to quash or traverse [a] search warrant" where any portion or all of the search warrant affidavit has been sealed, "the lower court should conduct an in camera hearing . . . . It must first be determined whether sufficient grounds exist for maintaining the confidentiality of the informant's identity. It should then be determined whether the entirety of the affidavit or any major portion thereof is properly sealed, i.e., whether the extent of the sealing is necessary to avoid revealing the informant's identity." (*Hobbs, supra*, 7 Cal.4th at p. 972.)

"[I]f the affidavit is found to have been properly sealed and the defendant has moved to quash the search warrant [citation], the court should proceed to determine

5

whether, under the 'totality of the circumstances' presented in the search warrant affidavit . . ., there was 'a fair probability' that contraband or evidence of a crime would be found in the place searched pursuant to the warrant. [Citations.] In reviewing the magistrate's determination to issue the warrant, it is settled that 'the warrant can be upset only if the affidavit fails as a matter of law . . . to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony. [Citations.]' [Citation.]" (*Hobbs, supra*, 7 Cal.4th at p. 975.)

"If the court determines, based on its review of all the relevant materials, that the affidavit . . . furnished probable cause for issuance of the warrant . . . [citation], the court should simply report this conclusion to the defendant and enter an order denying the motion to quash. [Citations.]" (*Hobbs, supra*, 7 Cal.4th at p. 975.) "In all instances, a sealed transcript of the in camera proceedings, and any other sealed or excised materials, should be retained in the record along with the public portions of the search warrant application for possible appellate review. [Citations.]" (*Ibid.*) On appeal, we review for abuse of discretion. (*Id.* at p. 976.)

After reviewing the transcript of the in camera proceedings and the sealed and unsealed portions of the search warrant affidavit, we conclude the trial court complied with the procedures set forth in *Hobbs* and there was no abuse of discretion.

As defendant notes, a review under *Hobbs* includes an assessment "whether there was probable cause to issue the warrant." (*Hobbs, supra*, 7 Cal.4th at p. 975.) However, because defendant includes specific argument on the probable cause issue beyond requesting a *Hobbs* review, while acknowledging his argument is incomplete because he does not have access to the sealed portion of the affidavit, we next address the probable cause issue in more detail.

6

## II

### *The Suppression Motion*

Having concluded the sealed portion of the search warrant affidavit was properly sealed, defendant asks us to determine whether the trial court properly denied his motion to quash the search warrant. Again citing *Alexander, supra*, 9 Cal.3d 387 and *Hernandez, supra*, 30 Cal.App.4th 919, defendant argues the affidavit shows " 'no nexus between the criminal activity and the actual residence' " searched. We disagree.

Probable cause sufficient to support a warrant is defined as " 'a fair probability that . . . evidence of a crime will be found in a particular place' " based on the totality of the circumstances. (*Illinois v. Gates* (1983) 462 U.S. 213, 238.) The magistrate's determination requires only a practical, commonsense evaluation of the facts, including the veracity and basis of knowledge of the sources of information. (*Ibid.*; *People v. Thuss* (2003) 107 Cal.App.4th 221, 235.) "When an appellate court reviews the validity of a search warrant, 'the magistrate's determination will not be overturned unless the supporting affidavit fails as a matter of law to support the finding of probable cause. [Citations.] Doubtful or marginal cases are resolved in favor of upholding the warrant. [Citations.] The burden is on [the defendant] to establish invalidity of [a] search warrant[].' " (*People v. Garcia* (2003) 111 Cal.App.4th 715, 720.)

The context of defendant's contacts with Puga distinguishes this case from *Alexander* and *Hernandez.* *Hernandez* involved the search of a house where officers observed a known drug dealer park a car behind the house and had seen cars the dealer had driven parked behind the house. (*Hernandez, supra*, 30 Cal.App.4th at pp. 921-922.) Likewise, in *Alexander*, a search warrant was based on the fact that a known drug dealer visited the defendant regularly, along with statements by a confidential informant the court found "unreliable." (*Alexander, supra*, 9 Cal.3d at p. 389.) Both appellate courts found such evidence insufficient to establish probable cause. (*Hernandez,* at p. 924; *Alexander,* at p. 394.)

7

Here, in marked contrast, the task force received information from three confidential informants identifying Puga as a heroin dealer and corroborated those claims. Task force members saw defendant's Toyota 4Runner at Puga's residence in February 2018 and saw Puga's vehicle at defendant's residence in January, February, March, and April 2018. Task force agents saw Puga taking extensive counter-surveillance measures before driving to defendant's residence, which in Officer Slagle's experience indicated drug distribution activity. Puga's visits to defendant's residence occurred consistently at night, and both defendant and Puga had prior convictions for possession and transportation of a controlled substance. Sealed evidence concerning the information and observations of multiple informants regarding details of Puga's distribution practices and networks further supported probable cause to issue the warrant. We conclude the trial court did not err in denying defendant's motion.

## DISPOSITION

The judgment is affirmed.

/s/
Duarte, J.

We concur:

/s/
Mauro, Acting P. J.

/s/
Krause, J.

8