Filed 4/26/16  P. v. Ball CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C078566 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F04620) |
| v. | |
| JOHNATHAN SHAWN BALL, | |
| Defendant and Appellant. | |

Following a jury trial, defendant Johnathan Shawn Ball was convicted of ten counts of lewd and lascivious acts upon a minor under the age of 14.  (Pen. Code, § 288, subd. (a).)[1]  The trial court sentenced defendant to an indeterminate term of 14 years to life pursuant to section 288, subdivision (i), plus a consecutive determinate term of 53 years.  The trial court also imposed a $10,000 restitution fine.

On appeal, defendant contends the trial court erred in imposing the indeterminate term because, though the jury found true the allegation that defendant inflicted great

---

[1]  Undesignated statutory references are to the Penal Code.

1

bodily injury upon the victim within the meaning of section 12022.7, the jury was not instructed on the question whether defendant inflicted bodily harm within the meaning of section 288, subdivision (i). Defendant correctly observes that the two statutes contain different definitions of bodily harm, and section 288, subdivision (i)(2) specifically provides that, "The penalty provided in this subdivision shall only apply if the fact that the defendant personally inflicted bodily harm upon the victim is pled and proved." The People concede the trial court's error and we accept the concession. Accordingly, we vacate the indeterminate sentence and remand for resentencing without application of section 288, subdivision (i). We reject defendant's contentions that the trial court erred in imposing a five-year enhancement pursuant to section 667, subdivision (a)(1), and a $10,000 restitution fine.

## I. BACKGROUND

Defendant sexually abused his stepdaughter, Melissa J., over a period of five years, beginning when she was seven years old. Over time, defendant's sexual abuse escalated from inappropriate touching to repeated rapes, which eventually caused Melissa J. to become pregnant at the age of thirteen. The abuse ended when Melissa J. confided in Jennifer, an adult relative. Jennifer took Melissa J. to the hospital, where a pregnancy test was administered. Jennifer then took Melissa J. to the police station, where Melissa J. made a pretext call to defendant. During the call, Melissa J. told defendant that she was pregnant, and defendant responded, "Okay. I love you." Later in the call, Melissa J. told defendant, "You can't tell mom, you'll get in trouble," and defendant responded, "Oh yeah. Oh hell."

Melissa J. terminated the pregnancy at ten weeks. DNA testing confirmed defendant's paternity.

Defendant was charged by complaint and later by information with twelve counts of lewd and lascivious conduct upon a minor under the age of 14. (§ 288, subd. (a).) The complaint alleged that each of the charged crimes was a serious felony within the

2

meaning of section 1192.7, subdivision (c). The complaint also alleged that defendant had a prior serious felony conviction within the meaning of section 667, subdivision (a).

The prosecution filed a first amended complaint (later deemed an information) approximately one year later. With respect to count four, the first amended complaint alleged that defendant inflicted great bodily injury upon Melissa J. within the meaning of section 12022.7, subdivision (a). The first amended complaint did not allege that defendant personally inflicted bodily harm upon Melissa J. within the meaning of section 288, subdivision (i). As before, the first amended complaint alleged that each of the charged crimes was a serious felony within the meaning of section 1192.7, subdivision (c), and that defendant had a prior serious felony conviction within the meaning of section 667, subdivision (a).

The prosecution filed a second amended information approximately one and one half years later. Once again, the second amended information alleged that defendant inflicted great bodily injury upon Melissa J. within the meaning of section 12022.7 with respect to count four, and that each of the charged crimes was a serious felony within the meaning of section 1192.7, subdivision (c). The second amended information also alleged that defendant "was on February 19, 2010, in the Superior Court of the State of California, for the County of Sacramento, convicted of the crime of First Degree Burglary in violation of Section 459 of the Penal Code, a serious felony, within the meaning of Section 1192.7[, subdivision ](c) of the Penal Code, and that by reason thereof, that he comes within the provisions of Section 667[, subdivisions ](b)-(i) and Section 1170.12 of the Penal Code." The second amended information did not allege a prior serious felony enhancement under section 667, subdivision (a)(1).

In November 2014, the case was tried before a jury. Prior to the start of trial, the trial court made a record of the parties' settlement negotiations, stating: "I understand up to this point the D.A.'s office has offered 40 years, a 40-year sentence. And that involves

3

multiple counts of [section] 288[, subdivision ](a). And all 12 counts are [section] 288[, subdivision ](a), which is six or eight triad.

"And there is one strike charged that is—apparently, the defendant is on probation for a first degree residential burglary that occurred in [2010], and so that would account [*sic*] as not only a strike, but also would count as a five-year prior.

"So using that math of doubling up the term, it is a possibility according to [the prosecutor] that—that the defendant could receive a maximum of 80 years in prison on this case if he were to be convicted of all counts and [the] prior [was] found to be true.

"And that the D.A.'s Office in light of that has offered a 40-year term. That is a determinate term."

The trial court then noted that defendant had made a counteroffer of 16 years in state prison, which the prosecutor planned to discuss with her supervisor.

Later, the trial court engaged the parties in another discussion of settlement. The following colloquy took place:

"THE COURT: Okay. And I take it [defense counsel], your client was not interested [in the prosecution's offer], just as he was not interested initially in the 40 years, he didn't rethink that and is not interested in 40 years today?

"[DEFENSE COUNSEL]: That's correct, your Honor. [¶] And I think part of the calculus also included a determination that the maximum exposure was somewhere around 80 years.

"THE COURT: Right.

"[DEFENSE COUNSEL]: And I think that may have been factored into the initial offer from the District Attorney's Office. I think we had a quick cursory math calculation in chambers and it came somewhere around 68 years.

"THE COURT: Right. [¶] I—I believe based on the fact that there is a [*sic*]one strike, that would serve as a strike, and also a five year prior, and also there is [section] 12022.7[, subdivision ](a), which carries three years. [¶] I think that using an upper term

4

calculation for one of the counts anyway, the maximum that the defendant could receive would be 68 years if he was convicted of all counts and the strike and five-year prior— prior were also found to be true. That's—that was my math on the subject. [¶] I think [the prosecutor] agrees that that is the maximum exposure and—and I believe you—you do as well.

Defense counsel then made a counteroffer of twenty years, which was evidently rejected.

Following the close of evidence, the jury was instructed with CALCRIM No. 3160 as follows: "If you find the defendant guilty of the crime charged in Count Four you must then decide whether the People have proved the additional allegation that the defendant personally inflicted great bodily injury on Melissa [J.] during the commission of that crime. [¶] Great bodily injury means significant or substantial physical injury. It is an [injury] that is greater than minor or moderate harm. [¶] Committing the crime of lewd and lascivious act with a child under the age of 14 is not by itself the infliction of great bodily injury. [¶] Pregnancy without medical complications that results from unlawful but non-forcible sexual conduct with a minor can support a finding of great bodily injury. [¶] However, it is up to the jury to decide whether the facts in this case support a finding that the defendant personally inflicted great bodily injury on Melissa [J.] [¶] The fact that Melissa [J.] had an abortion cannot by itself support a finding that the defendant personally inflicted great bodily injury. [¶] The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."

The jury was not instructed on section 288, subdivision (i)(3), which defines "bodily harm" as "any substantial physical injury resulting from the use of force that is more than the force necessary to commit the offense."

The jury found defendant guilty of ten of 12 counts, including count four. The jury also found true the allegation that defendant inflicted great bodily injury on Melissa

5

J. within the meaning of section 12022.7 in connection with count four. The matter was referred to the probation department for a presentence report.

The probation department recommended that defendant be committed to state prison for 14 years to life, reasoning that "[t]he indeterminate term is mandated by Penal Code section 288[, subdivision ](i)(l). A term is not being recommended for the 12022.7[, subdivision ](a) Penal Code allegation itself as it was used to enhance this count to an indeterminate term."

On January 23, 2015, the parties appeared for sentencing. At the sentencing hearing, the trial court found true allegations that defendant had a prior serious felony conviction within the meaning of the three strikes law. (§§ 667, subds. (b)-(i), 1170.12.) Turning to the probation report, the trial court remarked: "The only thing in the probation report that I found surprising, and that's simply because I—I haven't really reviewed this, the sentencing on this in a while, and that is that they are recommending a life sentence because there is a 12022.7[, subdivision ](a) allegation, that is a personal infliction of great bodily injury that was found true. And it attached to Count 4, which was a violation of Penal Code section 288[, subdivision ](a).

"And according to the Penal Code that elevates that from a more traditional determinate sentencing to the indeterminate sentence of seven to life on Count 4, which would then be doubled because of the strike prior to 14 years to life just on Count 4.

"And I don't know if we had discussed that. I don't remember discussing that ahead of time, whether we were trying to figure out what his maximum sentence was, and so I'm just referencing that from that point of view."

At defense counsel's request, the trial court then continued the sentencing hearing to give defendant more time in which to review the probation report.

During the continued sentencing hearing, defense counsel objected to the probation department's recommendation, noting that section 288, subdivision (i) was neither alleged in the complaint nor contemplated by the parties during settlement

6

negotiations. Among other things, defense counsel noted that the parties had previously discussed settlement on the record, and no mention was made of the possibility that defendant might receive an indeterminate term in connection with count four. Had defendant been aware of the possibility, defense counsel continued, he might have accepted the prosecution's offer of forty years in state prison.

The trial court responded: "Well, I guess the fact that there is a Penal Code Section that—[section[ 288[, subdivision ](i) that says that if you are convicted of inflicting great bodily injury and that's pled and proven, that you can receive a life sentence for that is notice insofar as everyone is supposed to be [aware of it]. At least as his lawyer you should have been aware of that.

"And I recognize that we did not discuss that here in court. And I don't think that I ever stated what my opinion was on his—his maximum. . . . I asked the lawyers for—for you to have discussion of that.

"And so it is in the Penal Code. And I can't say that I had looked it up myself before trial on that issue. But it is sure enough listed, [section] 288[, subdivision ](i)(1) and (2) lists that that is a—the sentence for—for a [section] 288[, subdivision ](a) when [great bodily injury] has been personally inflicted.

"The jury did find that to be true. And I—and I know there was [] basically the discussion was such that the defendant was looking at such a great amount of time that essentially it was—would be a life sentence if he did plead to the 40 years that the People were offering. Since these are violent felonies it would have to be done at 85 percent time.

"And so I'll just leave that where it is. I let the record speak for itself as to what was communicated to the defendant. I don't know what your personal communications were with him and so—but I know on the record that he was willing to plead to 20 years and—and the People were not willing to offer that."

7

The trial court then sentenced defendant to (1) a total determinate term of 53 years for counts 1, 3, 5, 6, 7, 9, 10, 11, and 12, and (2) a consecutive indeterminate term of 14 years to life for count four. The determinate term was calculated as follows: 16 years (the upper term, doubled) as to count 1, plus consecutive terms of four years each (one-third the mid-term, doubled) as to counts 3, 5, 6, 7, 9, 10, 11, and 12, plus five years for the prior serious felony. The indeterminate term was calculated as seven years to life (§§ 288, subd. (i), 3046), doubled for the prior strike conviction. The trial court also imposed a $10,000 restitution fine, stating "I'm imposing a $10,000 fine in this case because the defendant is going to be in prison effectively for the remainder of his life. He appears to be able-bodied enough to work in prison and he can work that fine off with prison earnings."

Defendant filed a timely notice of appeal.

## II. DISCUSSION

### A. *Indeterminate Term Pursuant to Section 288, Subdivision (i)*

On appeal, defendant contends the trial court erred in imposing a 14-years-to-life sentence on count four pursuant to section 288, subdivision (i). The People concede the error and we accept the concession.

Section 288, subdivision (i) provides: "(1) Any person convicted of a violation of subdivision (a) shall be imprisoned in the state prison for life with the possibility of parole if the defendant personally inflicted bodily harm upon the victim. [¶] (2) The penalty provided in this subdivision shall only apply if the fact that the defendant personally inflicted bodily harm upon the victim is pled and proved. [¶] (3) As used in this subdivision, 'bodily harm' means any substantial physical injury resulting from the use of force that is more than the force necessary to commit the offense." (§ 288, subd. (i)(1)-(3).)

8

Defendant correctly observes that bodily harm within the meaning of section 288, subdivision (i) was neither pled nor proven. Although the jury found true the allegation that defendant inflicted great bodily injury on Melissa J. within the meaning of section 12022.7, the jury had no occasion to consider whether defendant personally inflicted great bodily harm on Melissa J. within the meaning of section 288, subdivision (i). As defendant also observes, these harms are not coextensive. While section 12022.7, subdivision (f) defines "great bodily injury" as "a significant or substantial physical injury," section 288, subdivision (i)(3) defines "bodily harm" as "any substantial physical injury resulting from the use of force that is more than the force necessary to commit the offense." Thus, the jury's determination that defendant inflicted great bodily injury on Melissa J. within the meaning of section 12022.7 was not equivalent to a determination that defendant inflicted bodily harm within the meaning of section 288, subdivision (i)(3).

Under the Sixth Amendment, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490; *People v. Mosley* (2015) 60 Cal.4th 1044, 1056.) Here, section 288, subdivision (i) exposed defendant to a greater penalty than otherwise would have been authorized by section 12022.7, and was therefore required to have been tried by a jury and proven beyond a reasonable doubt. (*People v. Anderson* (2009) 47 Cal.4th 92, 107-108.) Accordingly, we will vacate the indeterminate sentence imposed for count four and remand for resentencing without application of section 288, subdivision (i).

B.      *Five-Year Enhancement Pursuant to Section 667, Subdivision (a)(1)*

Next, defendant argues the trial court erred in imposing the section 667, subdivision (a)(1) enhancement because no such enhancement was charged in the second amended information. Specifically, defendant contends the trial court erred in imposing the enhancement as a matter of due process because the second amended information

9

"did not put [defendant] on notice that he would be subject to a five-year serious felony enhancement under section 667, subdivision (a)." We are not persuaded.

As pertinent here, section 667, subdivision (a)(1) provides that "any person convicted of a serious felony who previously has been convicted of a serious felony in this state . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately." Under the statute, "when the defendant is convicted of a current serious felony . . . and has been previously convicted of a serious felony, the trial court must impose a five-year enhancement for each such prior conviction that was brought and tried separately. The terms of the present offense and each section 667[, subdivision ](a)[(1)] enhancement must run consecutively." (*People v. Dotson* (1997) 16 Cal.4th 547, 553.) "The trial court has no discretion and the sentence is mandatory." (*People v. Purata* (1996) 42 Cal.App.4th 489, 498.)

Here, the prosecution specifically referenced section 667, subdivision (a)(1) in the complaint and first amended complaint, but omitted any reference to the statute in the operative pleading. We conclude the omission was immaterial. The second amended information specifically referenced the statutory section and subdivisions corresponding to the Three Strikes law, specifically, section 667, subdivisions (b) through (i). Although the second amended information failed to reference section 667, subdivision (a)(1), "the imposition of the five-year enhancement for the prior serious felony conviction [is] part and parcel of the Three Strikes statutory scheme." (*People v. Dominguez* (1995) 38 Cal.App.4th 410, 425.) Furthermore, "it is clear that a valid accusatory pleading need not specify by number the statute under which the accused is being charged" (*People v. Thomas* (1987) 43 Cal.3d 818, 826); it is sufficient that the pleading identify the factual basis for imposition of the enhanced penalty. (*People v. Flynn* (1995) 31 Cal.App.4th 1387, 1392-1395; *People v. Shoaff* (1993) 16 Cal.App.4th 1112, 1117-1118.)

As noted, the second amended information alleges that "defendant . . . was on February 19, 2010, in the Superior Court of the State of California, for the County of Sacramento, convicted of the crime of First Degree Burglary in violation of Section 459 of the Penal Code, a serious felony, within the meaning of Section 1192.7[, subdivision ] (c) of the Penal Code, and that by reason thereof, that he comes within the provisions of Section 667[, subdivision ](b)-(i) and Section 1170.12 of the Penal Code." Thus, the second amended information adequately alleges the factual basis for a finding that defendant had a prior serious felony conviction. (§ 969; *People v. Flynn, supra,* 31 Cal.App.4th at pp. 1392-1395; *People v. Shoaff, supra,* 16 Cal.App.4th at pp. 1117-1118.) Although it would be better practice for the district attorney to allege the specific statutes by which she seeks to enhance a defendant's sentence, we conclude the second amended information provided sufficient notice of the potential five-year enhancement by stating the facts supporting it.

*People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*), on which defendant relies, does not compel a contrary conclusion. In *Mancebo*, the information charged the defendant with various sex crimes against multiple victims and alleged firearm use and kidnapping to support an enhancement under section 667.61. (*Mancebo, supra,* at p. 740.) At the sentencing hearing, the trial court sua sponte substituted a multiple-victim circumstance for the firearm-use allegation to support the enhancement under section 667.61 and to free up the firearm-use allegation for use to support other enhancements, even though the multiple-victim circumstance had not been alleged by either statute number or descriptive facts. (*Ibid.*) Our Supreme Court affirmed the judgment of the court of appeal reversing the sentence, holding that the trial court erred when it used an unpled multiple-victim circumstance to support an enhanced sentence under section 667.61. (*Id.* at pp. 739, 742-745, 754.) "*Mancebo* thus stands for the limited proposition that a defendant is entitled to notice of the specific *facts* that will be used to support an enhanced sentence. Facts alleged and proved only as part of the substantive crime

11

charged cannot later be used to support a sentencing enhancement." (*People v. Tardy* (2003) 112 Cal.App.4th 783, 789, italics added.)  Here, in contrast to *Mancebo*, defendant's sentence was enhanced on the basis of facts that were specifically and separately pleaded and proved for the purpose of enhancement.  We therefore conclude that *Mancebo* is distinguishable, and reject defendant's claim of error.

We likewise reject defendant's claim that he received ineffective assistance because his trial counsel failed to object to the enhancement.  To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)  To show prejudice, the defendant must show a reasonable probability he would have received a more favorable result had his counsel's performance not been deficient. (*Strickland, supra,* 466 U.S. at p. 693-694; *Ledesma, supra,* 43 Cal.3d at pp. 217-218.)

Even assuming arguendo that trial counsel's performance was deficient, defendant cannot show prejudice.  We reiterate that the five-year enhancement pursuant to section 667, subdivision (a)(1) was mandatory.  (*People v. Dotson, supra,* 16 Cal.4th at p. 553; *People v. Purata, supra,* 42 Cal.App.4th at p. 498.)   Under the circumstances, even a timely objection would have been unavailing.  We therefore reject defendant's contention that trial counsel was ineffective for failing to object to the enhancement.

## C.      Restitution Fine

Finally, defendant contends the trial court abused its discretion when it imposed the maximum restitution fine of $10,000.  Specifically, defendant contends the trial court "imposed the fine based on an incorrect understanding of the facts relating to [his] ability to pay a $10,000 fine from prison earnings."  We are not persuaded.

12

Preliminarily, we agree with the People that defendant forfeited his challenge to the restitution fine by failing to object at the sentencing hearing.  (*People v. Nelson* (2011) 51 Cal.4th 198, 227; *People v. Gamache* (2010) 48 Cal.4th 347, 409.)  Even assuming for the sake of argument that defendant had not forfeited this issue, he has not established an abuse of discretion.

Section 1202.4, subdivision (b) requires the trial court to impose a restitution fine "[i]n every case where a person is convicted of a crime," in the absence of compelling or extraordinary reasons for not imposing the fine.  Where, as here, a defendant is convicted of a felony on or after January 1, 2014, the fine shall be set between $300 and $10,000, commensurate with the seriousness of the offense.  (§ 1202.4, subd. (b)(1).)

In setting the fine above the minimum, "the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense, and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered any losses as a result of the crime, and the number of victims involved in the crime." (§ 1202.4, subd. (d).)  "Consideration of a defendant's inability to pay may include his or her future earning capacity.  A defendant shall bear the burden of demonstrating his or her inability to pay." (*Ibid*.)  "The statute thus impliedly presumes a defendant has the ability to pay and expressly places the burden on a defendant to prove lack of ability." (*People v. Romero* (1996) 43 Cal.App.4th 440, 449.)

At the sentencing hearing, the trial court stated, "I'm imposing a $10,000 fine in this case because the defendant is going to be in prison effectively for the remainder of his life.  He appears to be able-bodied enough to work in prison and he can work that fine off with prison earnings."  Defendant offered no evidence concerning his inability to pay.  "Where as here, a defendant adduces no evidence of inability to pay, the trial court should presume ability to pay, as the trial court correctly did here.  Since here defendant's ability to pay was supplied by the implied presumption, the record need not contain

13

evidence of defendant's ability to pay." (*People v. Romero, supra,* 43 Cal.App.4th at p. 449.)

On appeal, defendant argues that he has no realistic chance of paying the restitution fine from his future prison earnings. Defendant observes that the current rates of pay for work performed by prison inmates range from $12 per month to $56 per month, and are subject to a statutory maximum of one-half the minimum wage. (§§ 2700, 2801, subd. (b), 2811; Dept of Corrections and Rehabilitation, Operations Manual, § 51120.6, p. 359.) Section 2085.5, subdivision (a) directs the Director of Corrections and Rehabilitation to deduct 20 to 50 percent from the prisoner's wages for credit against the prisoner's restitution fine. Under current regulations, the amount deducted by the director for that purpose is 50 percent, but only 40 percent is transferred and credited toward the restitution fine. (Cal. Code Regs., tit. 15, § 3097(f).) Thus, defendant contends, even assuming he earns the highest rate of $56 per month, the amount deducted for credit against his restitution fine will be only $22.40 per month. At that rate, it would take defendant, who was fifty years old at the time of sentencing, more than 37 years to repay the fine.

We perceive nothing in the record to support defendant's contention that the trial court misunderstood the difficulties he might face in repaying the restitution fine. To the contrary, the evidence supports the trial court's implied finding of defendant's ability to pay, based solely on his potential prison earnings over the course of a lengthy sentence. In the absence of any evidence indicating that defendant is unable to work (and defendant has offered none), we decline to speculate as to whether defendant will be able to work long enough to repay the fine.

Furthermore, though ability to pay is one of the factors a trial court should consider in imposing a restitution fine above the statutory minimum, it is not the only factor. (*People v. DeFrance* (2008) 167 Cal.App.4th 486, 504-505.) The trial court must also consider "the seriousness and gravity of the offense and the circumstances of its

14

commission." (§ 1202.4, subd. (d).) Here, there is no question that defendant's crimes were serious and grave. Defendant sexually abused and raped his stepdaughter over a period of years, eventually impregnating her, and putting her in the position of undergoing an abortion as a preteen. On this record, we perceive no abuse of discretion in the trial court's imposition of the maximum fine, notwithstanding the challenges defendant may face in paying it.

## III.  DISPOSITION

The indeterminate sentence as to count four is vacated and the matter is remanded to the trial court for resentencing in accordance with this opinion. The clerk of the superior court is then directed to prepare an amended abstract of judgment and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


/S/

---
RENNER, J.



We concur:


/S/

---
ROBIE, Acting P. J.


/S/

---
BUTZ, J.