Filed 12/23/21  P. v. Jackson CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>DESHAWN LEE JACKSON,<br><br>  Defendant and Appellant. | F079852<br><br>(Super. Ct. No. DF013894A)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  David E. Wolf, Judge.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

# INTRODUCTION

Defendant DeShawn Lee Jackson was convicted by jury of one count of unauthorized possession of a controlled substance while in prison. (Pen. Code, § 4573.6, subd. (a).)[1]  In a bifurcated proceeding, the trial court found defendant had suffered a prior conviction for second degree murder with the use of a firearm (§§ 187, subd. (a), 12022.5, subd. (a)), a strike within the meaning of the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).  The court denied defendant's motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) to dismiss the prior strike offense.  On July 26, 2019, defendant was sentenced to the middle term of three years (§ 4573.6, subd. (a)), which was doubled to six years pursuant to the Three Strikes law (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)).  The court also imposed a $300 restitution fine under section 1202.4, subdivision (b), a $40 court operations assessment under section 1465.8, subdivision (a)(1), and a $30 court facilities assessment under Government Code section 70373, subdivision (a)(1).

In imposing the restitution fine and court assessments in July 2019, the court acknowledged *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) and found defendant was able-bodied based on his appearance during trial and his history of prison rules violations.[2]  The court indicated that if defendant became disabled, it would suspend the fines and fees.  Defense counsel objected to the court's imposition of the fine and assessments, but declined the court's offer to hold an ability-to-pay hearing.

Defendant argues the court abused its discretion both in denying his *Romero* motion and in imposing $370 in a restitution fine and court assessments, which had the

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     A Department of Corrections and Rehabilitation (CDCR) rules violation report (CDC 115) documents an inmate's serious misconduct that is a violation of law or otherwise not minor in nature.  (Cal. Code Regs., tit. 15, § 3312, subd. (a)(3); *In re Gray* (2007) 151 Cal.App.4th 379, 389.)

effect of violating defendant's due process rights under *Dueñas*. For the reasons discussed below, we reject these arguments and affirm the judgment.

## BACKGROUND

Pursuant to a 1995 conviction, defendant has been serving a term of 15 years to life consecutive to a four-year term for a firearm enhancement under section 12022.5, subdivision (a). While serving this sentence, defendant was found to have approximately 0.21 grams of methamphetamine in his back pocket in March 2018. He was charged with violation of section 4573.6 for possession of a controlled substance in prison. A jury trial was held in May 2019.

Correctional Officer Michael Rients testified he was working on clothed searches of inmates at the educational building's checkpoint. Rients saw defendant walking toward the checkpoint metal detectors when he turned around to go back into the prison yard. Rients stopped him and performed a clothed search and found a blue bindle in defendant's back pants pocket. The bindle was wrapped in the fingertip of a blue latex glove. Rients took the bindle to the program office, where it was opened and revealed two smaller bindles containing what looked like white powder. Rients was instructed to take the bindles to the investigative services unit office to have a narcotics identification kit (NIK) test performed. The NIK test indicated the substance in the bindles was methamphetamine.

Lieutenant Anthony Sotelo interviewed defendant, and defendant agreed to sign a substance identification field test waiver, which allows an inmate to admit that the item discovered is a controlled substance. Defendant also admitted the methamphetamine found belonged to him. On further lab testing, the substance found in the two smaller bindles was confirmed to be methamphetamine weighing 0.2192 grams.

Defendant testified he received the bindle from someone on his way to pick up his medication and go to educational classes. Because it was square, defendant thought the bindle was a kite and not contraband. He told Sotelo it was his because if he revealed

3.

who gave it to him and to whom he was supposed to deliver it, he could be subject to violent retaliation.

The jury found defendant guilty and, in a bifurcated proceeding, the court found defendant had committed a prior strike within the meaning of the Three Strikes law. The court denied defendant's *Romero* motion, and sentenced him to the middle term of three years, doubled to six years for the prior strike, and imposed a $300 restitution fine, a $40 court operations assessment, and a $30 court facilities assessment. The court acknowledged the *Dueñas* decision, but found defendant was able-bodied and imposed the restitution fine and court assessments. Defense counsel objected to the fine and assessments, but declined the court's offer to conduct an ability-to-pay hearing.

## DISCUSSION

### I.      No Abuse of Discretion in Denying the *Romero* Motion

At sentencing, the prosecutor highlighted defendant's CDC 115 violations in requesting the middle term: "I'd also like to note to the Court, his—defendant's [CDC] 115 history. 1997 he had a battery. 1998 a weapon. 1998 indecent exposure. 2000 he was cited for alcohol. 2002 for being out of bounds. 2009 participation in a riot. 2012 for fighting. And then as early as 2016 a [CDC] 115 for possession of a weapon." The prosecutor argued defendant should not be given any "*Romero* consideration." (Italics added.)

The trial court imposed the middle term and refused to strike the prior conviction. The court explained as follows, in relevant part:

"And in this particular case, [defendant] did not resist.… And so the fact that all [defendant] did was walk away, I think is a circumstance in mitigation that he did not use force to resist the officers. [¶] … I believe there are two other circumstances in

4.

aggravation. One, I think [California Rules of Court,] Rule 4.421 (b) (1),[3] that the defendant has engaged in violent conduct that indicates serious danger to society. And that includes, of course, the strike. But also his [CDC] 115 history as outlined by [the prosecutor]. I don't believe that's a dual use of [facts] because no one has considered the [CDC] 115s. Rule 4.421 (b) (3), the defendant served a prior term in prison or county jail. And I will also note that both of these rules involve a policy of enhancing punishment for repeated bad prior conduct. [¶] And if we are going to look at similarly situated defendants, the fact that he is currently serving his strike … he hasn't even managed to get on parole or probation. [¶] There was a [section] 12022.5[, subdivision] (a), use of a firearm. That's not required to make it a strike. And so I don't believe that is a dual use of facts. [¶] All said and done, I'd show one circumstance in mitigation, three in aggravation .… [¶] … [¶] So with regards to Count 1—I should say one other thing, [defendant]. I spent a long time thinking about this, because quite frankly I—I like you. You know, you've been in my court. I think you're a very nice person. You've always been respectful and nice. And I quite frankly would like to strike your strike just because I like you. But that's not what the law says. I'm supposed to look at aggravating and mitigating circumstances and apply the law equally to all people. And so you have always been a gentleman in my court, and that's made me definitely want to cut you a break. But when I apply the law equally applying the facts, I do think the midterm of six years is fair."

Defendant argues the trial court's refusal to strike the prior conviction was an abuse of discretion because the trial court erroneously conflated its discretion to strike the prior conviction with its choice of a determinate term based on the aggravating and mitigating factors set forth in rule 4.423. Defendant contends reversal is warranted so the

---

**3**      All further references to rules are to the California Rules of Court unless otherwise indicated.

court may properly exercise its discretion to strike the prior conviction based on the correct legal principles.

Pursuant to *Romero*, "a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, 'in furtherance of justice' pursuant to … section 1385[, subdivision ](a)." (*People v. Williams* (1998) 17 Cal.4th 148, 158.) In ruling on such a motion, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes law's] spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id*. at p. 161.)

A court's decision to strike a qualifying prior conviction is discretionary, and the reasons for doing so must be stated on the record. (See *Romero, supra*, 13 Cal.4th at pp. 530–531; § 1385, subd. (a).) A court's decision *not* to strike a prior also requires an exercise of discretion and is reviewed under the abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) There is a "'strong presumption' [citation] that the trial judge properly exercised his [or her] discretion in refusing to strike a prior conviction allegation" (*In re Large* (2007) 41 Cal.4th 538, 551), and the appellant has the burden of rebutting that presumption and demonstrating an abuse of discretion (*ibid.*; *People v. Carmony, supra*, at pp. 377–378).

The trial court's statement in denying defendant's *Romero* motion was less than perfectly clear. The court first discussed the mitigating and aggravating circumstances it found to warrant a midterm of three years, but then digressed to "say one other thing" about wishing to "strike [defendant's] strike" because defendant was "respectful and nice." The court indicated it could not strike the strike just because the court liked defendant and thought he was a nice person. Rather, the court stated it was required to

look at the aggravating and mitigating circumstances and apply the law equally. The court then circled back to a conclusion the midterm, doubled with the strike, was fair.

First, there is no indication the court considered any impermissible factors in denying the *Romero* motion. (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 434 [impermissible motivations or considerations in denying *Romero* motion, such as racial bias, may establish abuse of discretion].) Second, the court's reference to the selection of the doubled midterm again after discussing the strike suggests the interim mention of aggravating and mitigating circumstances was not necessarily related to the *Romero* motion. And even if it was, the context suggests the court used those words in a general sense—not as the terms of art those words represent when selecting the base term under the determinate sentencing law. (See § 1170, subd. (b); rules 4.420 & 4.421.) As the People point out, the court had already discussed defendant's prior juvenile record and murder conviction, his prison rules violations, and the fact he did not resist officers during the current offense. All of these factors were relevant facts and circumstances to determine whether to strike defendant's prior conviction under *Romero*, and the court indicated consideration of them. The court's passing reference to aggravating and mitigating circumstances does not affirmatively indicate a failure to consider all of the relevant *Romero* factors in denying the motion, or a lack of consideration whether defendant fell outside the spirit of the Three Strikes law.

Finally, there is no basis to conclude the court's ultimate decision to deny the *Romero* motion was an abuse of discretion. This was not a case where the relevant factors "manifestly support the striking of a prior conviction and no reasonable minds could differ …." (*People v. Carmony, supra*, 33 Cal.4th at p. 378.) Defendant's prior conviction was a violent offense, his current offense was not violent, but contributed to the flow and circulation of controlled substances in the prison which Lieutenant Sotelo described as a pervasive institutional problem. Defendant also had several prison rules violations that included battery and possession of a weapon for which he had been cited

7.

in 2016. Even if reasonable people could disagree whether to strike the prior conviction allegation, that does not establish an abuse of discretion. (*Ibid.*)

## II.     Defendant's Ability to Pay Restitution Fine and Court Assessments

Defendant argues the trial court's implicit finding he has the ability to pay $370 in assessments and a restitution fine is an arbitrary and capricious abuse of discretion because the finding is not supported by any principled basis. As he does not have the ability to pay, defendant argues the imposition of the $370 restitution fine and assessments constitutes a due process violation for the reasons explained in *Dueñas*.

### A.     Legal Background

In January 2019, the Second District Court of Appeal decided *Dueñas* on which defendant's claim is based. (*Dueñas, supra*, 30 Cal.App.5th 1157.) Velia Dueñas was a homeless probationer who suffered from cerebral palsy and was unable to work. (*Id.* at p. 1160.) As a teenager, she had received juvenile citations that she could not pay, and her driver's license was suspended as a result. (*Id.* at p. 1161.) Over the next few years, Dueñas suffered misdemeanor convictions related to driving without a license. She was offered a choice to pay a fine or serve jail time in lieu of payment, and because she could not pay, she served jail time. (*Ibid.*) Even after serving jail time, however, she remained liable for court fees associated with the convictions. She was unable to pay the mounting fees and assessments, and they were sent to collections. (*Ibid.*)

Then, in July 2015, Dueñas pled no contest to another misdemeanor charge of driving with a suspended license. (*Dueñas, supra*, 30 Cal.App.5th at p. 1161.) She again was forced to serve nine additional days in custody in lieu of paying a $300 fine; but the court still imposed court assessments and a $150 restitution fine under section 1202.4. (*Duenas, supra*, at p. 1162.) The court assented to Dueñas's request for an ability-to-pay hearing regarding the fine and court assessments—she claimed due process required the court to determine her ability to pay before imposing them. (*Ibid*.)

Dueñas submitted an uncontested declaration about her financial circumstances, and the court determined she lacked the ability to pay. (*Dueñas, supra*, 30 Cal.App.5th at p. 1163.) The court waived her previously ordered attorney fees based on indigency, but concluded the court assessments under Government Code section 70373 and Penal Code section 1465.8 were both mandatory regardless of her ability to pay. (*Dueñas, supra*, at p. 1163.) As to the restitution fine under section 1202.4, the court concluded she had not shown compelling and extraordinary reasons to justify waiving the fine, and rejected Dueñas's constitutional arguments that due process and equal protection required the court to consider her ability to pay either the assessments or the fine. (*Duenas, supra*, at p. 1163.)

On appeal, Dueñas argued the laws imposing fines and fees on people too poor to pay punish the poor for their poverty. The laws were fundamentally unfair in that respect and were irrational because they raise no money—people who cannot pay, do not pay. The appellate court agreed. (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.)

The *Dueñas* panel held that Government Code section 70373 and Penal Code section 1465.8 are fundamentally unfair and violate due process under the federal and state Constitutions when imposed upon indigent defendants without a determination of the "present ability to pay." (*Dueñas, supra*, 30 Cal.App.5th at p. 1168.) The court noted the assessment statutes were enacted to raise funds for the state courts and were not intended to be punitive. (*Id.* at p. 1165.) Nevertheless, the court reasoned, when imposition of these fines created mounting criminal justice debts from unpayable assessments, the statutes were transformed from a court-funding mechanism into additional punishment on those criminal defendants who could not pay. (*Id.* at p. 1168.) Relying on the constitutional principles of fair and equal treatment before the law for indigent defendants, as discussed in *Griffin v. Illinois* (1956) 351 U.S. 12, *In re Antazo* (1970) 3 Cal.3d 100, and *Bearden v. Georgia* (1983) 461 U.S. 660, the court concluded

9.

the assessments were fundamentally unfair if imposed without a determination whether the defendant has the ability to pay (*Dueñas, supra*, at p. 1168).

Addressing the restitution fine separately, the court reasoned that, although a restitution fine is intended as additional punishment for a crime, section 1202.4 expressly disqualifies inability to pay as a basis for waiving the fine. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1169–1170.) The court found this provision at odds with the statutory policy requiring restitution to be consistent with a person's ability to pay (§ 1203.2, subd. (a)) and with common law principles that consider a defendant's financial circumstances when imposing a punitive award (*Dueñas, supra*, at pp. 1169–1170). The court also observed an indigent defendant is not afforded the same relief at probation completion as those defendants who can pay their restitution fine—those unable to pay do not have the right to have the charges dropped and to be free from the penalties of the offense for which they are on probation. (*Id.* at pp. 1170–1171.) The court concluded this limits the rights of those unable to pay and is fundamentally unfair. (*Id.* at p. 1171.) To avoid a constitutional dilemma, the court held that, while section 1202.4 required imposition of a restitution fine, the trial court must stay execution of the fine "until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Dueñas, supra*, at p. 1172.)

In *People v. Castellano* (2019) 33 Cal.App.5th 485 (*Castellano*), a panel of the same division extended *Dueñas* beyond the unique facts relevant to Velia Dueñas's circumstances. After being found guilty by jury, and admitting prior strikes, Castellano was sentenced to three years of local custody followed by three years of mandatory supervised release. (*Castellano, supra*, at p. 488.) The court imposed assessments under Government Code section 70373 and Penal Code section 1465.8, and a $300 restitution fine under Penal Code section 1202.4, among others. (*Castellano, supra*, at p. 488.) On appeal, the court held Castellano was entitled to remand so that he could request a hearing on the ability to pay the fines, fees and assessments imposed. (*Id.* at p. 491.)

10.

While *Castellano* followed *Dueñas,* it nonetheless clarified it was the defendant's burden to request a hearing and demonstrate an inability to pay: "[A] defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court." (*Castellano, supra*, 33 Cal.App.5th at p. 490.)

Further, although *Dueñas* had referred to a defendant's "*present* ability to pay" (*Dueñas, supra*, 30 Cal.App.5th at p. 1164, italics added), *Castellano* held a defendant's future ability to pay may be considered (*Castellano, supra*, 33 Cal.App.5th at p. 490). *Castellano* explained the trial court is to "consider all relevant factors in determining whether the defendant is able to pay the fines, fees and assessments to be imposed. Those factors may include, but are not limited to, potential prison pay during the period of incarceration to be served by the defendant. If the trial court determines a defendant is unable to pay, the fees and assessments cannot be imposed; and execution of any restitution fine imposed must be stayed until such time as the People can show that the defendant's ability to pay has been restored." (*Ibid*., fn. omitted.)

Since *Dueñas*, the Courts of Appeal have split regarding if and under what circumstances the constitutional concerns underpinning the decision in *Dueñas* apply. The differing analytical paths chosen have been summarized in other opinions, including *People v. Cowan* (2020) 47 Cal.App.5th 32, 39–42, review granted June 17, 2020, S261952 (*Cowan*). Some Courts of Appeal have followed *Dueñas* (e.g., *People v. Belloso* (2019) 42 Cal.App.5th 647, 662–663 (*Belloso*), review granted Mar. 11, 2020 S259755), while other courts have concluded *Dueñas* was wrongly decided, in part or in whole, or limited *Dueñas* to its facts (e.g., *People v. Pack-Ramirez* (2020) 56 Cal.App.5th 851, 859–861; *People v. Cota* (2020) 45 Cal.App.5th 786, 794–795; *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1053–1055; *People v. Allen* (2019) 41 Cal.App.5th 312, 326–330; *People v. Hicks* (2019) 40 Cal.App.5th 320, 325–330 (*Hicks*), review granted

11.

Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1067–1069; *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844 (*Kopp*)).

The California Supreme Court is now positioned to address the issues raised by *Dueñas*, having granted review in *Kopp*. In that case, the Court of Appeal concluded that as to court assessments, the defendants were entitled to remand for an ability-to-pay hearing under *Dueñas*, but they bore the burden of demonstrating their inability to pay. (*Kopp, supra*, 38 Cal.App.5th at pp. 95–96, review granted.) As to fines, *Kopp* declined to follow *Dueñas*'s due process approach and concluded that a constitutional challenge to a punitive fine must be raised under the excessive fines clause of the Eighth Amendment of the federal Constitution and article I, section 17 of the California Constitution. (*Kopp, supra*, at pp. 96–98, review granted.) The California Supreme Court limited review in *Kopp* to whether courts must consider a defendant's ability to pay in imposing fines, fees and assessments; and, if so, which party bears the burden of proof. Briefing in *Cowan, Belloso* and *Hicks* was deferred pending the Court's decision in *Kopp*.

B.     **Analysis**

1.     **Inability-to-pay Hearing Declined**

Defense counsel interposed only an objection to the imposition of the fine and assessments, but offered no argument and refused the court's offer of an ability-to-pay hearing.

> "[THE COURT]:  I am aware of the *Dueñas* case.  And I understand the ramifications of that case.  [⁋]  I will note the defendant does appear to be able-bodied, not only as he appears in court and appeared during the trial, but also based upon his history of [CDC] 115s.  [⁋] … [⁋]  If you do become disabled in the future, let your attorney's office know right away because we can suspend those fines and fees.  [⁋]  [Defense counsel], anything further on behalf of your client?

> "[DEFENSE COUNSEL]:  Can we just clarify it's three times two, and that we are objecting to the fines and fees.

12.

"THE COURT: Yes. The Defense is objecting to the fines and fees. And your client can have a hearing. [¶] Would you like to have a hearing at this time, or just lodge a general objection?

"[DEFENSE COUNSEL]: I think lodge a general objection.

"THE COURT: All right. My previous ruling stands. You are correct. It is two times three because of the strike. [¶] Anything else, [defense counsel]?

"[DEFENSE COUNSEL]: No." (Italics added.)

### 2. Defendant Failed to Prove an Inability to Pay

Defendant's inability-to-pay claim rests on an assertion there is no evidence to support the trial court's implicit finding defendant has the ability to pay—thus, the imposition of the fine and assessments is a due process violation under *Dueñas*. This argument, however, misconceives who bears the burden of proof regarding a defendant's inability to pay, especially here where, as the People note, defendant was offered and declined an ability-to-pay hearing and made no evidentiary proffer to support his objection to the fine and assessments.

*Dueñas* concluded that "although the trial court is required by … section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that [Dueñas] has the ability to pay the fine." (*Dueñas, supra*, 30 Cal.App.5th at p. 1172.) This might be read to suggest the People bear the burden of proving an ability to pay any fines, fees and assessments, but *Dueñas* cannot be divorced from its facts. There, the trial court had already found Dueñas was unable to pay based on an evidentiary hearing where she had presented uncontested evidence of her financial condition. (*Id.* at p. 1163.)

As noted, *Castellano* clarified it is the defendants who must contest their ability to pay any fines, fees and assessments and at a hearing present evidence of their inability to pay the amounts contemplated by the court. (*Castellano, supra*, 33 Cal.App.5th at p. 490.) Although we await the California Supreme Court's determination of this issue in

13.

*Kopp*, multiple Courts of Appeal are in accord with *Castellano*. (E.g., *Kopp, supra*, 38 Cal.App.5th at p. 96, review granted ["It is the defendant who bears the burden of proving an inability to pay."]; *People v. Santos* (2019) 38 Cal.App.5th 923, 934 ["it is the defendant's burden to demonstrate an inability to pay, not the prosecution's burden to show the defendant *can* pay, as the *Duenas* decision might be read to suggest"]; *Cowan, supra*, 47 Cal.App.5th at p. 49 ["[A]lthough *Duenas* can be read to suggest that the People must bear the burden of proving a defendant's ability to pay a challenged assessment or fine [citation], we agree with the courts that have since held a defendant bears the burden of proof on that issue."]; *People v. Montes* (2021) 59 Cal.App.5th 1107, 1121 [distinguishing *Dueñas* on the issue of burden].)

The restitution statute provides additional support for this conclusion. Under section 1202.4, subdivision (d), when a court considers increasing the restitution fine above the statutory minimum, a court is required to consider any relevant factors, including defendant's ability to pay. But, the statute expressly makes it defendant's burden to demonstrate his or her inability to pay and express findings by the court as to the factors bearing on the amount of the fine are not required. (§ 1202.4, subd. (d).) Impliedly, the statute creates a presumption a defendant has the ability to pay unless the defendant demonstrates otherwise. (*People v. Avila* (2009) 46 Cal.4th 680, 729, citing *People v. Romero* (1996) 43 Cal.App.4th 440, 449 [the statute "impliedly presumes a defendant has the ability to pay," and leaves it to the defendant to adduce evidence otherwise].)

Here, defendant offered no evidence in support of his objection to the fine and assessments, and declined the court's offer to develop evidence through an ability-to-pay hearing. The only evidence of defendant's financial circumstances was contained in a probation report which was completed without interviewing defendant. The report noted defendant had no income, but there was no indication defendant's prison trust account had been reviewed nor was it included with the probation report. Attached to defendant's

*Romero* motion were letters from four correctional officers who wrote recommendations based on defendant's three-year work history as a porter in the prison. It is not clear whether defendant was paid prison wages for this work. The probation report also stated there was no available information about whether defendant had any assets or property.[4]

Defendant points out he was deemed to be indigent for purposes of court-appointed counsel. Although this indigency finding entitles defendant "to a presumption of indigence for most purposes" (*People v. Rodriguez* (2019) 34 Cal.App.5th 641, 645), it is not sufficient to establish he cannot pay $370 (see *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397 ["[A] defendant may lack the 'ability to pay' the costs of court-appointed counsel yet have the 'ability to pay' a restitution fine."]). Given the cost of attorney's fees, the ability to pay for defense costs is fundamentally different from the ability to pay a much smaller and discrete $370. The indigency finding for purposes of appointed counsel by itself was not evidence from which the court could have concluded defendant was unable to pay $370, and defendant did not lack an opportunity to establish otherwise.

Beyond defendant's failure to establish he is *currently* unable to pay $370, there is no evidence his potential future earning capacity was so insubstantial he would be unable to pay $370. There is authority to support the proposition future income is relevant to the ability to pay the restitution fine. (*People v. Douglas, supra*, 39 Cal.App.4th at p. 1397; *People v. Gentry* (1994) 28 Cal.App.4th 1374, 1376–1377; *People v. Frye* (1994) 21 Cal.App.4th 1483, 1487.) Even small gifts from family and friends have been deemed relevant to an ability to pay a restitution fine for an inmate categorically precluded from earning prison wages. (*People v. Potts* (2019) 6 Cal.5th 1012, 1055–1057.) Moreover, multiple courts have concluded future earning capacity may be taken into account to

---

**4** The probation report noted that defendant was not interviewed because he was housed by CDCR and was unavailable; the report indicated financial information about defendant was mostly "Unavailable."

determine an ability to pay any amount of fines, fees and assessments. (*People v. Santos, supra*, 38 Cal.App.5th at p. 934; *Kopp, supra*, 38 Cal.App.5th at p. 96, review granted; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.)  Here, the court expressly noted defendant was not disabled and appeared able-bodied—indeed, defendant demonstrated his ability to perform prison work through the letters of recommendation attached to his *Romero* motion.

An undeveloped record may impede assessment of a defendant's ability to pay while in prison (*People v. Montes, supra*, 59 Cal.App.5th at p. 1123), but in this case defendant was provided an opportunity to offer evidence as to his future earning capacity yet declined to do so.  Defendant was uniquely positioned to offer such evidence because he had been incarcerated for more than 20 years at the time of sentencing.  For example, he could have offered evidence from his trust account about past financial gifts from family and friends (or lack thereof) as indicative of the future; he could have offered testimony or a declaration about whether he has ever been paid wages for the work he performed in prison, whether he has sought paid prison work, and whether there was paid work available at his particular institution given his skill set.

Notably, defendant does not argue his future ability to pay was an inappropriate consideration, but he maintains any reliance on future prison wages to support an ability-to-pay finding was unsubstantiated.  On appeal, defendant cites a report from the Legislative Analyst's Office, a nonpartisan office that provides fiscal and policy information and advice to the Legislature, which evaluated the Governor's budget proposal for 2018 to 2019.[5]  From this report, defendant extrapolates there were only about 9,000 jobs available for approximately 120,000 inmates in California prisons at that time—defendant thus estimates 90 percent of prison inmates are unemployed.  Based on

---

[5]     See https://lao.ca.gov/reports/2018/3762/2018-19-crim-justice-proposals-022818.pdf, pages 13–16 (as of Dec. 23, 2021).

16.

this calculation, defendant argues the trial court had no reasonable basis to conclude he could earn future prison wages as so few jobs are actually available.

Setting aside that it is unclear how defendant adduces the universe of inmate jobs from this report, the report says nothing about the availability of work at defendant's facility, whether defendant has a paid position, or has attempted to obtain a paid position. Further, the report was never offered to the trial court to consider. It was defendant's burden to prove his inability to pay, not the government's burden to prove his ability to pay.

Based on this record, which defendant expressly declined to develop further, we are unpersuaded by defendant's assertion he would be unable to pay $370 through potential future prison wages. The minimum prison wage is $12 per month. (Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).) Half of any wages earned are deducted to pay any outstanding restitution fine. (Pen. Code, § 2085.5, subd. (a); Cal. Code Regs., tit. 15, § 3097, subd. (f).) CDCR also deducts an additional 10 percent of the deduction as an administrative fee. (Cal. Code Regs., tit. 15, § 3097, subd. (c).) Even assuming defendant earned only the minimum amount, it would take approximately 50 months to pay the restitution fine (at $6 per month), leaving $270 in the trust account ($5.40 per month after the deductions) to pay the $70 in assessments.

Moreover, defendant is currently only 44 years old and, while he must serve the additional, consecutive term imposed for the conviction in this case, he will be eligible for parole in the not-too-distant future. Given his prison work history—whether paid or not—his ability and commended performance in completing his prison work duties, his relatively young age, commitment to obtaining college credits, and his parole potential, defendant has not established he will be unable to pay $370 either through prison wages or future earnings outside prison should parole be granted at some point in the future.

In sum, it was defendant's burden to show he does not have the ability to pay the $370 fine and assessments. Defendant offered no evidence on this issue and declined the

17.

court's offer to conduct an ability-to-pay hearing. The trial court did not abuse its discretion, given the record before it, by imposing $370 in a fine and assessments that defendant had not established he was unable to pay. As defendant has not established an inability to pay, we do not reach the constitutional issues articulated in *Dueñas* and its progeny.

## DISPOSITION

The judgment is affirmed.